## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

Lawrence Goings,

        Plaintiff, on behalf of himself
        and all others similarly situated

v.

Boilermaker-Blacksmith National Pension Trust;
Board of Trustees of the Boilermaker-
Blacksmith National Pension Trust; Terry
AnCel, Trustee of the Boilermaker-Blacksmith
National Pension Trust; J. Tom Baca, Trustee of
the Boilermaker-Blacksmith National Pension
Trust; Jeff Brown, Trustee of the Boilermaker-
Blacksmith National Pension Trust; Scott
Anderson, Trustee of the Boilermaker-
Blacksmith National Pension Trust; Warren
Fairley, Trustee of the Boilermaker-Blacksmith
National Pension Trust; D. David Haggerty, Jr.,
Trustee of the Boilermaker-Blacksmith National
Pension Trust; Charles Hancock, Trustee of the
Boilermaker-Blacksmith National Pension Trust;
Robert Hutsell, Trustee of the Boilermaker-
Blacksmith National Pension Trust; Eric A.
Heuser, Trustee of the Boilermaker-Blacksmith
National Pension Trust; Mike Hidas, Trustee of
the Boilermaker-Blacksmith National Pension
Trust; Robert Lunsford, Jr., Trustee of the
Boilermaker-Blacksmith National Pension Trust;
Lawrence J. McManamon, Trustee of the
Boilermaker-Blacksmith National Pension Trust;
Larry Jansen, Trustee of the Boilermaker-
Blacksmith National Pension Trust; Michael
Morash, Trustee of the Boilermaker-Blacksmith
National Pension Trust; James A. Pressley,
Trustee of the Boilermaker-Blacksmith National
Pension Trust; John J. Skermont, Trustee of the
Boilermaker-Blacksmith National Pension Trust;
Ronnie L. Traxler, Trustee of the Boilermaker-
Blacksmith National Pension Trust; Mark
Vandiver, Trustee of the Boilermaker-
Blacksmith National Pension Trust; David J.
Zach, Trustee of the Boilermaker-Blacksmith
National Pension Trust,

        Defendants.

Case No.: 2:20-cv-2294

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Lawrence Goings, by and through undersigned counsel, brings this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* to recover benefits due, declare his rights and remedy violations of the terms of the Boilermaker-Blacksmith National Pension Trust and ERISA. On his own behalf and all others similarly situated, Plaintiff alleges that Defendants have violated and are violating the terms of the pension plan and ERISA by, *inter alia*: purporting to suspend benefits in violation of the terms of the Plan, imposing retroactive Plan rules and/or amendments that expand the restrictions on post-retirement employment without notice, , and violating  multiple provisions of ERISA Title 1 and the terms of the Plan governing disclosure, vesting and accrual of benefits and fiduciary responsibility.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2.      Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 as the breach took place and the pension plan is administered in the District of Kansas, and Defendants are headquartered in this District.

### PARTIES

3.      At various times from in or around  November 1977 through in or around April 2007, Plaintiff Lawrence Goings ("Mr. Goings") was employed as a Boilermaker by various employers that had collective bargaining agreements pursuant to which employers were required to contribute to the Boilermaker-Blacksmith National Pension Trust ("Plan").

4.      At all times relevant, Mr. Goings is and was a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

5.      Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants working as Boilermakers, including Plaintiffs and their beneficiaries.

6.      Defendant Board of Boilermaker-Blacksmith National Pension Trust is the Administrator of the Plan ("Board") and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

7.      Defendant Terry Ancel at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

8.      Defendant Scott Anderson at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

9.      Defendant J. Tom Baca at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

10.     Defendant Jeff Brown at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

11.     Defendant Warren T. Fairley at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

12.     Defendant D. David Haggerty, Jr. at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

13.     Defendant Charles Hancock at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

14.     Defendant Eric A. Heuser at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

15.     Defendant Mike Hidas at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

16.     Defendant Robert D. Hutsell at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

17.     Defendant Larry Jansen at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

18.     Defendant Robert Lunsford, Jr. at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

19.     Defendant Lawrence McManamon at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

20.     Defendant Michael Morash at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

21.     Defendant James A. Pressley at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

4

22.     Defendant John J. Skermont  at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

23.     Defendant Ronnie L Traxler at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

24.     Defendant Mark Vandiver at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

25.     Defendant David J. Zach at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the  Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

GENERAL ALLEGATIONS

26.     At various times from in or around 1977 through in or around April 2007, Mr. Goings worked as a Boilermaker for various employers that had contracts with the International Brotherhood of Boilermakers and that had signed pension agreements requiring the employer to make contributions to the Plan ("Collective Bargaining Agreements").

27.      By virtue of his covered employment under Collective Bargaining Agreements, Mr. Goings became vested and earned nonforfeitable rights to his accrued benefits under the Plan.

28.     Mr. Goings' last job as a Boilermaker prior to his retirement was with Sterling Boiler and Mechanical.

29.      Mr. Goings' last job as a Boilermaker prior to his retirement ended on or about April 30, 2007.

30.     Mr. Goings has not worked as a Boilermaker at any time since on or about April 30, 2007.

31.     At various times on and after 2002, Mr. Goings also worked in Quality Control positions sometimes for the same employers who also employed him as a Boilermaker.

32.     Quality Control work was not covered under with the Plan or the Collective Bargaining Agreements that were incorporated into the written terms of the Plan document. Except as otherwise noted, the Plan document referred to herein is the Plan document effect in 2010 when Mr. Goings retired.

33.     Mr. Goings did not receive credit and did not earn benefits under the Plan for his employment in Quality Control positions.

34.     Quality Control work is not work that is traditionally covered under Boilermakers Collective Bargaining Agreements that require contributions to the Pension Fund.

35.     Normal Retirement Age under the Plan is, in relevant part, age 65.

36.     The Plan provides for early retirement pensions for Participants who are at least age 55 but less than 65 and meet other early retirement eligibility requirements for an early retirement pension including years and hours of service requirements set forth in Section 4.07 of the Plan

37.     Sections 8.08 and 8.09 of the Plan define retirement under the Plan and the limitations on post-retirement employment.

38.     With respect to participants who retire before normal retirement age, Section 8.08(a) ("Disqualifying Employment") and 8.09 ("Suspension of Benefits") together provide that retirees who retire before normal retirement age cannot engage in the following type of work following retirement:

(a) **Before Normal Retirement Age**. Effective July 1, 2010, to be considered retired and entitled to a pension under this Plan before he has attained Normal Retirement Age, a Participant must withdraw completely and refrain from employment or self-employment for an employer which performs work in an industry traditionally covered by a Collective Bargaining Agreement:

    (1) where the employment or self-employment is in a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States; or

> (2) where the employment or self-employment includes any direct supervision of a job classification of the type included in a Collective Bargaining Agreement anywhere in the United States in the construction industry.

***

39.     Section 1.06 of the Plan defines and limits the term "Collective Bargaining Agreement" as used in the Plan as collective bargaining agreements between the International Brotherhood of Boilermakers and an Employer as follows:

> An agreement in effect at the time of reference between the International Union and/or any of its Local Lodges and an Employer, an Employer Committee or an Employer Association which requires the Employers covered thereby to contribute to the Trust

40.     Under the Plan, if a participant retires prior to normal retirement age and thereafter engages in work of the sort set forth in Section 8.08 and 8.09 of the Plan, the participant will have his or her benefits suspended and not paid for the period the participant works in such employment.

41.     In addition, a retiree who retires before normal retirement age may also be subject to a penalty for engaging in work that may be suspended if he or she does not notify Defendants of such work within 21 days of commencing such work as follows:

> If a Pensioner becomes employed in work of the type described in Section 8.08 of this Article, he must notify the Trustees, in writing, within 21 days following commencement of such employment. If he fails to give such written notice within such 21-day period and:
> (1) He is younger than Normal Retirement Age and it is the first time his benefits have been suspended, his pension shall be suspended for an additional period of three months over and above the suspension period specified in the preceding subsection (a) but not beyond Normal Retirement Age ...

42.     The Plan § 8.09(h) further provides that a participant who is contemplating post-retirement employment shall have a right to request and thereafter challenge a determination by or on behalf of the Trustees that contemplated employment will be disqualifying.

43.    When Mr. Goings began contemplating retirement, he planned to work following retirement as a Quality Control employee.

44.    Accordingly, prior to his retirement, on or about June 3, 2010, Mr. Goings requested a determination as to whether his contemplated post-retirement employment as a Quality Control employee constituted prohibited employment within the meaning of the Plan, stating in relevant part:

> I expect to work for Bureau Veritas of North America and other companies, as a Quality Control employee.  Prior to working for any company at this capacity, I am asking the Pension department verify this work is NOT prohibited and pension payments will Not be suspended while employed as Quality Control personnel.

45.    By letter dated July 15, 2010, Defendants advised Plaintiff that he could retire and could work as a Quality Control employee following retirement without loss or suspension of pension benefits.

46.    In reliance on Defendants' determination that he could retire and continue to work as a Quality Control employee, Plaintiff retired effective on or about September 1, 2010.

47.    At no time subsequent to his retirement did Plaintiff work as a Boilermaker nor did he work for an employer or engage in self-employment in an industry traditionally covered by a Collective Bargaining Agreement where the employment or self-employment was in a job classification of the type included in a Collective Bargaining Agreement that was in effect when Mr. Goings was accruing benefits under the Plan as a Boilermaker.

48.    At no time subsequent to his retirement did Plaintiff supervise employees working as Boilermakers nor did he work in an industry traditionally covered by a Collective Bargaining Agreement supervising employees was in a job classification of the type included in a Collective Bargaining Agreement that was in effect when Mr. Goings was accruing benefits under the Plan as a Boilermaker.

49.     Rather, as expressly authorized by Defendants, following his retirement Plaintiff worked as a Quality Control employee and performed such work intermittently.

50.     Mr. Goings' employment in Quality Control positions ended in or around May 2018.

51.     Following Mr. Goings' retirement in 2010, Defendants never asked Mr. Goings to verify his employment until in or around 2018.

52.     At no time subsequent to his retirement did Defendants advise Plaintiff that he could no longer work as a Quality Control employee or that Quality Control work was covered under a Boilermaker Collective Bargaining Agreement.

53.     By letter dated October 17, 2018, Plaintiff was notified that his pension benefits would be suspended for his Quality Control work for Cortec Precision Sheetmetal effective August 2017 through May 2018.

54.     Mr. Goings timely appealed the determination to suspend his benefits.

55.     On or about March 28, 2019, Defendants denied Mr. Goings' appeal, stating, *inter alia*:

> You worked as a Certified Welding Inspector (CWl)/Quality Control Inspector for Cortec Precision Sheetmetal Inc. from August 2017 through May 2018.  The employment is considered disqualifying under the terms of the Pension Plan because Cortec Precision Sheetmetal Inc. is considered to be in an industry traditionally covered by a Collective Bargaining Agreement (CBA) and your job duties  of  visually inspecting welds and joints is covered under the job classification of certified welding inspector under the Quality Control Council of the United States  National  Non-Destructive Testing Agreement (QCCUS Agreement).

56.     Defendants further stated that Plaintiff had purportedly been overpaid pension benefits for the months of August 2017 through May 2018, that he was required to pay the Plan

$47,037.80 and that if he did not repay such amount to Defendants, he would face a reduction in his monthly pension benefits for more than three years to pay the purported payment.

57.     Plaintiff has fully exhausted his administrative remedies.

58.     In or around May 2019, Plaintiff paid Defendants $47,037.80 in response to Defendants' demand for the purported overpayment.

59.     In addition, even though in 2010, Plaintiff expressly requested permission to work as a Quality Control employee for Veritas "and other companies" and even though Defendants had expressly approved that work in 2010, Defendants imposed an additional three months penalty which can only be imposed if a participant does not advise Defendants in advance of post-retirement employment.

60.     Defendants did not pay Plaintiff his monthly pension benefits for the months of May 1, 2019 through July 1, 2019 thereby depriving Plaintiff of 13 months of benefits which should not have been suspended and to which he is entitled.

61.     Upon information and belief, sometime after Mr. Goings ceased working as a Boilermaker, the Plan started receiving contributions under a new Collective Bargaining Agreement it entered into with other labor unions with recognition of separate skilled trades and separate collective bargaining agreement jurisdiction and authority for the first time included Quality Control employees as employees covered under the Plan which had the effect of purporting to expand the scope of the suspension of benefits provisions to work outside the scope of traditional Boilermaker jobs.

62.     Defendants applied their alleged expanded scope of suspendible job classifications to employees whose benefits were earned prior to the purported expansion of suspendible job classifications.

10

63.     Neither the Plan's summary plan descriptions nor notices of material modifications ever advised Plaintiff and Class Members of the expanded scope of the suspension of benefits provisions.

64.     No notice was provided to Plan participants in advance of implementation of Defendants' expansion of the suspension of benefits job categories to allegedly include Quality Control employees.

65.     Upon information and belief, the Plan applied and continues to apply to Mr. Goings and other similarly situated Plan participants an expanded suspension of benefits rule that prohibits any work as a Quality Control employee.

## CLASS ALLEGATIONS

66.     In addition to Plaintiff's individual claim for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following class:

> All Plan participants (and their surviving spouses and eligible beneficiaries) whose retirement  benefits were suspended or will, during the pendency of this action be suspended, or whose retirement benefits were or will be suspended on the grounds that they were working as a Quality Control employee or inspector.

67.     The Class is so numerous that joinder is impracticable including because of the number of Class Members and because the members of the class are geographically dispersed throughout the United States.

68.     The website of the International Brotherhood of Boilermakers states that it has 235 local lodges across the United States and that it represents workers throughout the United States.

69.      The Form 5500 Annual Return Report for the Plan for the year ending December

31, 2018 states that there are more than 48,000 active and terminated vested participants and more than 31,000 retired Participants in the Plan.

70.    There are questions of law and fact common to the members of the Class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

    a.    whether Defendants violated the terms of the Plan and ERISA by suspending participants' benefits and seeking repayment of benefits paid on the grounds that that Class Members were working in Quality Control positions;

    b.    whether Defendants violated ERISA's vesting and accrual of benefits requirements including ERISA's prohibitions on retroactive amendments that reduce benefits and reductions in future benefit accruals without notice that reduced Class Members' accrued benefits and rate of future benefit accruals by expanding the scope of the Plan's suspension of benefits provisions;

    c.    whether Defendants breached their fiduciary duties by, *inter alia*:  failing to notify Plaintiff and Class Members that it had purported to expand the scope of suspendible employment, purporting to reduce  participants' vested and accrued rights to benefits under the Plan by purporting to apply expanded suspension of benefits provisions, and demanding repayment of benefits based on Defendants own breaches of fiduciary responsibility, lack of disclosure and violations of the Plan's terms; and

    d.    whether Defendants failed to provide accurate disclosures including notices of material modifications and accurate summary plan descriptions.

71.     Named Plaintiff will fairly and adequately represent the interests of the Class Members. He has diligently pursued his claims and engaged the undersigned experienced ERISA and class action counsel.

72.     The prosecution of separate proceedings by the individual members of the class would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

73.     Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the class as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the class, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the class as a whole.

74.     A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

> a.  the Class Members have suffered from the same violations of the terms of the Plan and ERISA and the numbers and geographic diversity of Class Members make joinder impractical; and
>
> b.  the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for  some individual participants likely constitute a significant and recurring obstacle to the ability of individual Class Members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the

future to cause loss of valuable pension and ERISA rights unless remedied

through injunctive and other appropriate relief.

## COUNT I
## (TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

75.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as

though fully set forth herein.

76.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1)  Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall
discharge his duties with respect to a plan solely in the interest of the
participants and beneficiaries and–
(A)  for the exclusive purpose of:
(i)  providing benefits to participants and their
beneficiaries; and
(ii)  defraying reasonable expenses of administering the
plan;
(B)  with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a like
capacity and familiar with such matters would use in the
conduct of an enterprise of a like character and with like aims;

***

(D)  in accordance with the documents and instruments governing
the            plan insofar as such documents and instruments are
consistent with the provisions of this title and title IV.

77.     Section 405 of ERISA, 29 U.S.C. § 1105, provides in relevant par for co-

fiduciary liability as follows:

In addition to any liability which he may have under any other provisions
of this part, a fiduciary with respect to a plan shall be liable for a breach of
fiduciary responsibility of another fiduciary with respect to the same plan
in the following circumstances:
(1) if he participates knowingly in, or knowingly undertakes to conceal, an
act or omission of such other fiduciary, knowing such act or omission is a
breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the
administration of his specific responsibilities which give rise to his status
as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he
makes reasonable efforts under the circumstances to remedy the breach.

78.     Defendants have a fiduciary responsibility to provide Plaintiff and Class Members with truthful and adequate disclosures of the Plan's suspension of benefits provisions and of changes to such provisions and to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

79.     By the acts and omissions complained of above, including, *inter alia*, by failing to adequately provide notice of Plan suspension of benefits provisions, failing to give advance notice to participants that the Plan's suspension of benefits provision was expanded and that work that was previously not subject to suspension of benefits would result in suspension of Plaintiff's and Class Members' pension benefits, Defendants deprived Plaintiff and Class Members of rights protected by ERISA and the terms of the Plan and breached their fiduciary duties to Plaintiff and Class Members and are liable to Plaintiff and Class Members as fiduciaries and as co-fiduciaries for knowingly participating in the acts or omissions set forth herein and failing to make reasonable efforts to remedy the breaches set forth herein.

80.     As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and Class Members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA and the Plan has been unjustly enriched.

81.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3),  provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

82.     Section 502(a)(1)(B) of ERISA, 29 U.S.C.  § 1132(a)(1)(B), provides that:

15

A civil action may be brought -

> (1) by a participant or beneficiary - . . .
>                              ***
> (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

83.    Plaintiff and Class Members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from purporting to apply expanded suspension of benefits provisions including work in Quality Control positions or any similar rules not contained in the terms of the Plan; surcharging the fiduciaries, requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits, reforming the Plan, *inter alia*, to clarify that the expanded suspension of benefits provisions do not apply to Plan participants' entitlement to benefits; and enjoining Defendants to immediately make Plaintiff and all Class Members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty;  and such other and further relief as the Court deems just and proper, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))

84.    Plaintiff repeats and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

85.    By the acts and omissions set forth above, including, *inter alia*, by suspending Plaintiff and Class Members' retirement benefits even though they were eligible for those

16

benefits under the terms of the Plan, Defendants violated the terms of the Plan.

86.     As a proximate result of Defendants' violations of the terms of the Plan, Plaintiffs and Class Members were harmed and deprived of benefits due under the terms of the Plan.

87.     As a result of Defendants' violations of the terms of the Plan, Plaintiff and Class Members are entitled to an order declaring that Defendants violated the terms of the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiff and Class Members all benefits due, together with prejudgment and post-judgment interest, attorneys' fees and costs.

**COUNT III**
**(TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS**
**REQUIREMENTS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))**

88.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

89.     Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g)  Decrease of accrued benefits through amendment of plan
(1)  The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2)  For purposes of paragraph (1), a plan amendment which has the effect of–
(A)  eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B)  eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. ...

90.     Section 204(h) of ERISA, 29 U.S.C. § 1054(h), provides in relevant part:

(h)  Notice of Significant Reductions in Benefit Accruals
(1)   A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual,

17

> unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—
>
> (A) each participant in the plan,
> (B) each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

91.     In accordance with settled law under ERISA, plan amendments adopted in violation of ERISA §§ 204(g) and (h) never become effective.

92.     Because the expanded Collective Bargaining Agreements are incorporated into the Plan and the expansion of job types and classifications not previously covered under the Plan or Collective Bargaining Agreements purports to restrict benefits by suspending benefits for employment that had previously been not suspendible unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), and could never became effective.

93.     By the acts and omissions complained of above, including, *inter alia,* by amending the Plan and the incorporated Collective Bargaining Agreements to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan and Collective Bargaining Agreement amendments, Defendants violated ERISA, including, *inter alia* ERISA §§ 204(g) and (h) and applicable regulations.

94.     As a proximate result of Defendants' violations of ERISA, Plaintiff and Class Members have been harmed and, *inter alia*, have been deprived of rights and accrued benefits due or to become due and Defendants have been unjustly enriched.

95.     Plaintiff and Class Members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 204 and applicable regulations; enjoining Defendants from restricting benefits based on expanded suspension of benefits rules and to immediately make Plaintiff and all Class Members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to restrict eligibility for retirement benefits and declaring that such amendments never became effective; requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits and the wrongful denial of retirement benefit applications; enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

### COUNT IV
### (TO REDRESS VIOLATIONS OF ERISA'S WRITTEN PLAN AND DISCLOSURE REQUIREMENTS)

96.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

97.     Section 101 of ERISA, 29 U.S.C. § 1021, Duty of Disclosure and Reporting provides in relevant part:

(a)   Summary plan description and information to be furnished to participants and beneficiaries
        The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan--
    (1)   a summary plan description described in section 1022(a)(1) of this title; and

(2) the information described in subsection (f) and sections 1024(b)(3) and 1025(a) and (c) of this title.

98.     Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description, provides in relevant part:

(a)    A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) of this title.

(b)    The summary plan description shall contain the following information: . . . the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this title).

99.     Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of summary plan description and annual report to participants and beneficiaries of plan, provides in relevant part:

(1)    The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–

(A)    within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or

(B)    if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan

20

becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan... .

(2)  The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3)  Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

100.    Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

101.    By the acts and omissions complained of above, Defendants violated ERISA §§ 101, 102, 104 and 402 and regulations thereunder.

102.    As a proximate result of Defendants' violations of ERISA §§ 101,102, 104, and 402, Plaintiff and Class Members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of

opportunities and ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

103.    Plaintiff and Class Members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 101, 102, 104, and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from applying the expanded suspension of benefits provisions  and to recalculate and pay all Class Members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT V
## (TO REDRESS VIOLATIONS OF ERISA'S VESTING REQUIREMENTS)

104.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

105.    ERISA § 203(a), 29 U.S.C. § 1053(a) provides in relevant part that:

Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
(1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
(2)(A)(i) In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
(ii) A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

106.    By the acts and omissions complained of above, including by expanding the suspension of benefits provisions and Collective Bargaining Agreements in a manner that

Case 2:20-cv-02294-EFM-KGG   Document 1   Filed 06/12/20   Page 23 of 26

resulted in lower pension benefits, Defendants violated ERISA § 203 and applicable regulations.

107.    As a proximate result of Defendants' violations of ERISA § 203, Plaintiff and Class Members have been harmed and, *inter alia*: have been deprived of vested benefits, and Defendants have been unjustly enriched.

108.    Plaintiff and Class Members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA § 203 and applicable regulations, enjoining Defendants from violating ERISA §203 and to recalculate and pay all Class Members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT VI
## (TO REDRESS DEFENDANTS' FAILURE TO PAY PROMISED BENEFITS UNDER ESTOPPEL)

109.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

110.    By the acts and omissions set forth above, Plaintiff and Class Members have been harmed and, *inter alia*, deprived of rights to pension benefits and have suffered and will suffer other economic loss.

111.    Defendants are estopped to deny that Plaintiff and Class Members are entitled to pension benefits.

112.    Plaintiffs and Class Members are entitled to declaratory, injunctive and other appropriate equitable relief, including, but not limited to, an order declaring that Defendants are

estopped to deny Plaintiff and Class Members their pension benefits and ordering to pay Plaintiffs and Class Members' benefits, an order requiring Defendants to submit to an accounting and disgorge the value of the benefits unjustly withheld from Plaintiff and Class Members together with all profits attributable thereto, and an order surcharging the Plan trustees for Plaintiffs and Class Members' losses, together with pre-judgment, post-judgment interest, attorney's fees and costs.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor against Defendants as follows:

A.  Declaring that Defendants violated ERISA §§ 101, 102, 104, 203 204, 402, 404, 405, and 502, 29 U.S.C. §§ 1021, 1022, 1024, 1053 1054, 1102, 1104, 1105 and 1232, and regulations thereunder;

B.  Declaring that Defendants violated the terms of the Plan;

C.  Declaring that Defendants are estopped from denying Plaintiff and Class Members benefits for work as a Quality Control employee;

D.  Enjoining Defendants from violating ERISA §§ 101, 102, 104, 203, 204, 402, 404, 405, 502 and 503, 29 U.S.C. §§ 1021, 1022, 1024, 1054, 1102, 1104, 1105, 1232 and 1133, and enjoining implementation of expanded suspension of benefits provisions;

E.  Enjoining Defendants from violating the terms of the Plan;

F.  Ordering reformation of the Plan, *inter alia*, to clarify that the Plan's expanded suspension of benefits provisions cannot be applied, declaring that the amendment expanding the scope of the suspension of benefits provisions was a retroactive

reduction of accrued benefits that did not and cannot be effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

G.     Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and Class Members together with all profits attributable thereto;

H.     Surcharging each and every member of the Board of Trustees for the full amount of Plaintiff's and Class Members' withheld retirement benefits and such other amounts to make Plaintiff and Class Members whole;

I.     Enjoining Defendants to recalculate and pay Plaintiff's and Class Members' retirement benefits and restore the benefits that were paid to Defendants and/or reduced and withheld and make Plaintiff and Class Members whole for all losses, including pre-judgment and post-judgment interest;

J.     An award of attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory, and

K.     Awarding such other and further relief the Court deems just and proper.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the trial site for this case.

**DATED** this 12th day of June 2020

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By: /s/ Rik N. Siro

| | |
|---|---|
| Rik N. Siro | (KS FED #77812) |
| Eric W. Smith | (KS #16539) |
| Athena M. Dickson | (KS #21533) |
| Raymond A. Dake | (KS FED #78448) |
| Ryan P. McEnaney | (KS FED #78827) |
| 1621 Baltimore Avenue | |

25

Kansas City, Missouri, 64108
816.471.4881 (Tel)
816.471.4883 (Fax)
rsiro@sirosmithdickson.com (email)
esmith@sirosmithdickson.com (email)
adickson@sirosmithdickson.com (email)
rdake@sirosmithdickson.com (email)
rmcenaney@sirosmithdickson.com (email)


**MARTIN & BONNETT, P.L.L.C.**
Susan Martin (*pro hac vice* app. forthcoming)
Jennifer Kroll (*pro hac vice* app. forthcoming)
Michael M. Licata (*pro hac vice* app. forthcoming)
4647 N. 32nd St., Suite 185
Phoenix, Arizona 85018
602.240.6900 (Tel)
602.240.2345 (Fax)
smartin@martinbonnett.com (email)
jkroll@martinbonnett.com (email)
mlicata@martinbonnett.com (email)

**ATTORNEYS FOR PLAINTIFFS**